Bobbie L. BLEVINS, Plaintiff,

v.

Arthur S. FLEMING (Flemming), Secretary of Health, Education, and Welfare, United States of America, Defendant.

Civ. A. No. 1508.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Jan. 29, 1960.

David O. Partain, Van Buren, for plaintiff.

Chas. W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action brought by the plaintiff under Sec. 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The plaintiff seeks to establish her rights and claims for childhood disability benefits and to establish a period of disability as provided by Sec. 202(d)

(1) et seq., of the Social Security Act, as amended, 42 U.S.C.A. § 402(d) (1).

The plaintiff filed her original application with the Bureau of Old-Age and Survivors Insurance, Social Security Administration, on October 22, 1956. Her claim was based on the wage record of her father, Troy D. Blevins, who was awarded old-age insurance benefits on November 22, 1954. On April 27, 1957, the Bureau informed the plaintiff that it had determined that the available evidence did not indicate that her impairment was so severe before she reached age 18 as to have prevented her from engaging in any substantial work. On July 15, 1957, plaintiff's father requested reconsideration, and on January 27, 1958, the Bureau informed the plaintiff that the initial determination was affirmed. Thereafter, on March 21, 1958, plaintiff's father filed a request for a hearing, and after due notice a hearing was held at Fort Smith, Arkansas, on February 20, 1959.

The plaintiff was not represented by counsel at the hearing, but the Referee aided her in developing her case and was very courteous to the plaintiff and her family. The hearing consisted of oral testimony by the plaintiff, her father, Troy D. Blevins, a sister, Mrs. Carl Brownlee, and a cousin, Mrs. Agnes Whitlock. In addition, the Referee had before him medical reports from three doctors.

On March 23, 1959, the Referee filed his decision denying the plaintiff's applications. The plaintiff has exhausted the administrative remedies, and the Referee's decision has become the final decision of the Secretary.

This action to review that decision was filed on October 16, 1959, and on December 16, 1959, defendant filed his answer together with a certified copy of the transcript of the administrative record, including the evidence presented at the hearing before the Referee and the Referee's written decision. The applicable statutory law in this case is contained in 42 U.S.C.A. § 402(d) (1), which provides:

"(d) (1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age insurance benefits, or of an individual who dies a fully or currently insured individual after 1939, if such child—

"(A) has filed application for child's insurance benefits,

"(B) at the time such application was filed was unmarried and either (i) had not attained the age of eighteen, or (ii) was under a disability as defined in section 423(c) of this title which began before he attained the age of eighteen, and

"(C) was dependent upon such individual at the time such application was filed, or, if such individual had died, was dependent upon such individual at the time of such individual's death,

shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: such child dies, marries, is adopted (except for adoption by a stepparent, grandparent, aunt, or uncle subsequent to the death of such fully or currently insured individual), attains the age of eighteen and is not under a disability (as defined in section 423(c) of this title) which began before he attained such age, or ceases to be under a disability (as so defined) on or after the day on which he attains age eighteen."

Disability is defined in Sec. 423(c) (2) of Title 42, U.S.C.A., as:

"The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not

be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

■ It is not seriously controverted that the plaintiff is dependent upon her father, Troy D. Blevins. The only question for determination by the Referee, therefore, was whether the plaintiff was under a disability which began before she attained the age of 18 and continued until she filed her claim. His determination of this question is the basis of this review. The general rules which must be followed by this court in the instant case are well established. In Fuller v. Folsom, D.C.W.D.Ark., 155 F. Supp. 348, 349, the general rules were stated as follows:

"The burden of proof, both before the Referee and in the instant proceeding, is upon the plaintiff. Thurston v. Hobby, D.C.Mo., 133 F.Supp. 205; Norment v. Hobby, D.C.Ala., 124 F.Supp. 489. Not only are the findings of fact made by the Referee, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the Referee's findings to inferences and conclusions which he draws from the evidence, if there is a substantial basis for the conclusions. Rosewall v. Folsom, 7 Cir., 239 F.2d 724; United States v. LaLone, 9 Cir., 152 F.2d 43; Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Walker v. Altmeyer, 2 Cir., 137 F.2d 531; McGrew v. Hobby, D.C. Kan., 129 F.Supp. 627; Hemmerle v. Hobby, D.C.N.J., 114 F.Supp. 16; Schmidt v. Ewing, D.C.Pa., 108 F. Supp. 505; Holland v. Altmeyer, D.C.Minn., 60 F.Supp. 954.

"The Referee's conclusions of law, however, are not binding upon the Court, although they are entitled to great weight. See, Miller v. Burger, 9 Cir., 161 F.2d 992; Carroll v. Social Security Board, 7 Cir., 128 F.2d 876; Ayers v. Hobby, D.C.Va., 123 F.Supp. 115; Ray v. Social Security Board, D.C.Ala., 73 F.Supp. 58.

"And in reviewing the decision of the Referee, the Court must not abdicate its conventional judicial function. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456; Shields v. Folsom, D.C.Pa., 153 F.Supp. 733, 734."

The Referee did not make any findings of fact as such, and his written decision is merely a summary of the individual testimony and exhibits. Fortunately, in this case the facts are not in dispute, and therefore must be accepted by the Referee and by the court.

The plaintiff was born February 21, 1928, and resides with her parents at Alma, Arkansas. When she was 9 years of age, she became afflicted with epilepsy of the grand mal type. She usually suffers the seizures at night; however, she has had several in the daytime. The attacks generally last from three to five minutes, and during that period her muscles tighten, her body becomes stiff, breathing is difficult, and it is necessary to put something in her mouth to prevent her biting her tongue and lips. Her kidneys act during every seizure, and following a seizure she sleeps for about 30 minutes before it is possible to awake her. When the plaintiff was about 17 years old and in the 11th grade, she suffered an attack at school and had to be brought home. She never returned to school. Following this, the plaintiff was employed by a cannery on two separate occasions. Apparently she was not able to perform the work because of her impairment, and she was compelled to cease work. While endeavoring to work, she had to be assisted home from the plant on several occasions. Since quitting the job at the cannery, her activity has been primarily confined to assisting her mother with household tasks.

In 1947 plaintiff suffered several attacks and apparently had a nervous breakdown. At this time she was placed on additional medication by her physician. One of the medications was ap-

parently dilantin sodium, although it is generally referred to in the transcript of testimony and in the Referee's opinion only as "strong medicine." There was no testimony or finding by the Referee as to the number of seizures between 1948 and 1957. Apparently, however, the "strong medicine" was reasonably effective in reducing the paroxysmal seizures but not the symptomatic seizures during this period. The plaintiff experienced one attack in 1957, several attacks in 1958, and five attacks in 1959.

The testimony generally indicates that the plaintiff has difficulty remembering ordinary events, and that she requires close supervision in performing even menial tasks.

Representatives of the Arkansas State Rehabilitation Center have contacted the plaintiff and her family on several occasions relative to the plaintiff's admittance to the State Vocational Rehabilitation Center in Little Rock for training. The plaintiff has declined to seek admission to the Center. She testified that Dr. Chamberlain told her she simply could not go. (Tr. 49.) In this connection, the members of the plaintiff's family testified that it would not be safe to send her to the Center because she is not capable of taking care of herself.

Reports from three doctors are attached as exhibits to the record. Dr. C. T. Chamberlain of the Holt-Krock Clinic in Fort Smith, Arkansas, first examined the plaintiff in the spring of 1946, and last saw her in March 1958. Dr. Chamberlain reported that the plaintiff has suffered from grand mal epilepsy since age 9; is forced to maintain daily anti-convulsant therapy in order to avoid seizures; her condition is static; and that he considers the plaintiff totally disabled. He classifies the plaintiff as average or below average in intelligence.

A report was also made by Dr. L. A. Whittaker of Fort Smith who first treated the plaintiff in 1947 and who last saw her in April 1958. He also gives a history of grand mal epilepsy beginning at age 9, and states that the condition is static and that he has advised the plaintiff not to work. He states that fair control has been achieved with dilantin sodium. He also notes that the plaintiff is mentally defective.

The plaintiff was referred by the Bureau to Dr. Henry M. Sims of Fort Smith for a psychiatric evaluation. His report in the form of a letter [1] was attached as an exhibit to the record. Dr. Sims reviewed the plaintiff's history and stated that she has lived in a sheltered environment and has not been given an

1. "Harold L. Overbey, Chief
"Disability Determination
"501 Woodlane Avenue
"Little Rock, Arkansas
"Dear Mr. Overbey:
        Re: Bobbie L. Blevins
"Following was examined in my office December 30, 1958. She stated that she could not go to Little Rock fearing the trip. Felt inadequate to go by herself. She gives a history of grand mal seizures from age nine. She continued in school to the eleventh grade when she had her first daytime seizure and then left school and appeared to become a recluse and very dependent on her parents. Patient described 'complete nervous breakdown' at that time and this is not clear as to whether she was having frequent seizures with stupor or having an emotional reaction to her condition. Since that time she has had adequate therapy under Drs. Whittaker and Chamberlain. She is

taking Dilantin and has not had an attack for over a year.
"In view of the patient's marked dependency and sheltered environment with her family it appears evident that she has not been given an opportunity of achieving success in keeping with her innate abilities. It was her belief that her doctors had said she could not do anything, so that she has not shown any initiative other than doing house work.
"It is my recommendation that she be referred to the Vocational Rehabilitation Center in Little Rock and an attempt be made to allow her admission to the intensive program. It will be necessary to counsel with her parents before they would be willing for her to go to Little Rock for such purpose.
                "Yours very truly,
                "/s/ Henry M. Sims, M.D.
                "Henry M. Sims, M.D."

opportunity of achieving success in keeping with her innate abilities. He recommended that she be referred to the Vocational Rehabilitation Center in Little Rock.

Several other doctors have treated the plaintiff since she had her first seizure at age 9. However, they are all either deceased or have moved from this area.

The Referee concludes his decision with the following paragraphs:

"The evidence establishes that claimant has had epileptic form seizures since age nine of the grand mal (convulsive seizures). These attacks, which generally occur at night, consist of tightening of the muscles with the body rigidity extended for three, four, or as much as five minutes. These attacks are accompanied by biting of tongue and lips, and are followed by a period of about thirty minutes sleep from which claimant cannot be awakened. In 1947 claimant apparently had a nervous breakdown with an increase of attacks in 1948. At this time she was put on dilantin sodium with a marked decrease in the number of attacks until just prior to the date of the hearing when, within a period of about sixteen days, she suffered five such attacks.

"The referee takes notice of the fact that between seizures, epileptics who have no mental impairment are capable of their normal mental and physical functioning. Consequently, the epilepsy has not been disabling for periods extending over years from the point of view of the number of attacks. There is no definite scientific evidence that seizures themselves produce intellectual or psychic defects. The claimant appeared to the referee to have a very good personality and he detected no signs of any mental deficiency. More important, the report from the consultative psychiatrist would indicate that, given a reasonable opportunity, claimant could achieve success in keeping with her innate abilities. Although claimant's doctors stated that she is unable to work, at the same time they state that 'fair control' has been achieved with dilantin sodium. Though control achieved by medication has not precluded very infrequent seizures, the referee believes that the control in this case was sufficient to permit claimant to engage in the performance of substantially valuable work with some regularity over a reasonable period of time since 1948 when she was placed on 'strong medicine.' The evidence to the contrary, such as that claimant tried to work and found it necessary to quit because of her nervous condition, cannot be given too much weight because it appears that claimant has not been given a reasonable opportunity to test her real ability to work and achieve success by reason of her innate abilities.

"Upon consideration of all the evidence of record, it is the finding of the referee that claimant's impairments, or any combination thereof, were not of such a degree of severity as to preclude claimant from engaging in some types of gainful activities for which she could qualify by training and experience, since prior to February 1, 1956, when she attained age eighteen, and continuing thereafter until she filed the said applications. This conclusion, in the opinion of the referee, is consistent with the intent of Congress to accord disability benefits only to individuals who are unable to engage in any substantial gainful employment, even though it can be concluded that they are suffering from some disabilities, even of a severe nature. This conclusion also appears to be in accord with regulations issued under the Act.

"For the reasons heretofore stated, it is the decision of the referee that claimant is not entitled to disability insurance benefits under

the Act, on the basis of the applications heretofore filed.

"Date: Mar 23, 1959.
"/s/ Paul M. Cadra

"Paul M. Cadra, Referee"

As heretofore stated, we have in this case the medical testimony of two physicians who have treated the plaintiff over a period of years. Dr. Chamberlain states that the plaintiff is totally disabled. Dr. Whittaker states that he has advised the plaintiff not to work and that her condition is static. On the other hand, we have the letter of Dr. Sims who examined the plaintiff on one occasion. Dr. Sims states only that due to the plaintiff's marked dependency and sheltered environment, she has not been given an opportunity of achieving success in keeping with her innate abilities. He further recommends that she be referred to the State Vocational Rehabilitation Center in Little Rock.

The defendant contends in his brief that little importance can be attached to any conclusion offered by any of the doctors upon the ultimate question of whether the plaintiff is able to engage in any substantial gainful activity. The weight of cases is to the contrary, however. See Hill v. Fleming, D.C.W.D. Pa.1958, 169 F.Supp. 240; Lewis v. Flemming, D.C.E.D.Ark.1959, 176 F. Supp. 872. Of course, the effect to be given the opinion testimony of doctors must vary with the circumstances in each case.

In the recent case of Kohrs v. Flemming, 8 Cir., 1959, 272 F.2d 731, the Court of Appeals for this Circuit discussed the effect of the uncontradicted testimony of an expert medical witness in a similar case. At page 736 of 272 F.2d the court said:

"The opinion of an expert witness is, of course, advisory, but as was stated in Hill v. Fleming, D.C.Pa., 1958, 169 F.Supp. 240, 245, where the court was faced with a similar problem:

" ' Expert opinions on such issues are admissible evidence to be con-

sidered by the fact finder, but when they are not repudiated in any respect by substantial evidence to the contrary, an adverse decision on these ultimate facts should be set aside as based on "suspicion" and "speculation".' "

In the present case the only evidence which in any manner contradicts the reports and conclusions of Drs. Chamberlain and Whittaker is the letter report of Dr. Sims. Certainly the testimony of the family of the plaintiff supported her position and was consistent with that of her two doctors. In his report Dr. Sims did not state that the plaintiff in her present condition or at any time since age 18 was capable of employment in any substantial gainful activity. On the contrary, he merely noted that she was dependent upon her parents, that she lived in a sheltered environment, and that he recommended that she be referred to the State Vocational Rehabilitation Center in Little Rock. The court does not feel that the report of Dr. Sims contradicts the reports and opinions of Drs. Chamberlain and Whittaker.

Defendant contends in his brief that the plaintiff and her family have refused the rehabilitation service of the State agency even in the face of the declared policy of Congress in support of such programs as set forth in 42 U.S.C.A. § 422(a), which provides:

"It is declared to be the policy of the Congress that disabled individuals applying for a determination of disability, and disabled individuals who are entitled to child's insurance benefits, shall be promptly referred to the State agency or agencies administering or supervising the administration of the State plan approved under the Vocational Rehabilitation Act for necessary vocational rehabilitation services, to the end that the maximum number of such individuals may be rehabilitated into productive activity."

However, subsection (c) of that same section provides:

"For purposes of sections 416(i) and 423 of this title, an individual shall not be regarded as able to engage in substantial gainful activity solely by reason of services rendered by him pursuant to a program for his rehabilitation carried on under a State plan approved under the Vocational Rehabilitation Act. This subsection shall not apply with respect to any such services rendered after the eleventh month following the first month during which such services are rendered."

Therefore, since under subsection (c) the work performed by a claimant during the first eleven months of a vocational rehabilitation program is not to be regarded as substantial gainful employment within the provisions of Sec. 423, Title 42, the court does not feel that the opinion of a doctor that a claimant should be "referred to" a vocational rehabilitation center can be considered as substantial evidence to support such a finding.

In concluding the hearing the Referee told the plaintiff and her family:

"In this connection, you should bear in mind the term 'disability' as used in the Act means in effect total and permanent disability, inability to engage in any substantial gainful activity whatsoever, and that is the primary question which I will consider on the medical evidence in the record and in the light of your testimony, so thanks again for coming in." (Tr. 50)

It is obvious from studying the record and the Referee's opinion that the Referee applied the term "disability" as meaning total and permanent disability. Circuit Judge Rives, sitting by special designation, in Aaron v. Fleming, D.C. M.D.Ala.1958, 168 F.Supp. 291 at page 295 said:

"It is further apparent that the referee gave too strict an application to 'disability.' Even though the Act is worded in strong language and the Congressional history indicates a strict policy of application, to conclude in this case that the plaintiff is not 'disabled' within the meaning of the Act would make 'disability' commensurate with 'helplessness,' 'bed-ridden,' or 'at death's door.' No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perform 'any substantial gainful activity.' I do not interpret the Act to apply only to the totally helpless and bed-ridden nor to those at death's door. If a wage earner has the inability to engage in 'any substantial gainful work' which is commensurate with his education, training, experience, and physical and mental capacities, then he should be given the benefit of the 'disability freeze.'"

In viewing the record as a whole, the court must recognize the undisputed medical testimony of two qualified physicians who state that the plaintiff is disabled, not able to work and that her condition is static. The facts that the plaintiff does have some mental difficulty and at intervals becomes very nervous cannot be disregarded. She requires constant supervision in the domestic work she does under the direction of her mother. She is not trained in any vocation.

The final harsh fact which must be recognized is that a convulsive seizure can occur at any time and at any place. When the attacks so occur, it is imperative that the plaintiff be in the presence of some understanding person who knows what steps to take to protect her. The plaintiff's very life may depend on this prompt action.

The fact that she has been reared in "a sheltered environment" does not militate against her claim. On the other hand it supports her claim. Her father and mother have done what any other parents would have done in a similar situation. They know her condition and even though her future is not bright, they have given her the necessary protec-

294

tion for more than two decades. She is now more than thirty years of age, and her physical and mental condition remains "static."

The court can only conclude that the finding of the Secretary is not supported by substantial evidence and must be set aside. The plaintiff has sustained her burden of proving a disability and period of disability as defined in the Act.

Therefore, an order is being entered today in accordance with this opinion reversing and remanding the case to the Secretary of Health, Education and Welfare with directions that the plaintiff be placed under the coverage granted by Sec. 402(d) (1) of Title 42 U.S.C.A.