**Albert J. WRAY, Plaintiff,**

v.

**Arthur FLEMMING, Secretary of Health, Education and Welfare, United States of America, Defendant.**

**Civ. A. No. 1437.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

March 24, 1960.

David T. Westmoreland, Ft. Smith, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action in which the plaintiff, Albert J. Wray, seeks to establish "a period of disability" under provisions of the Social Security Act, 42 U.S.C.A. § 416. The action was filed in this court on June 24, 1958, after the plaintiff had exhausted all administrative procedures.

On September 25, 1958, plaintiff moved to remand the cause to the Secretary of Health, Education and Welfare for the receipt of additional evidence. Accordingly the case was remanded to the Secretary on October 15, 1958, for the receipt of additional medical evidence, together with any other evidence the Secretary might wish to receive. See Wray v. Folsom, D.C.W.D.Ark.1958, 166 F. Supp. 390.

On November 3, 1958, Arthur Flemming, Secretary of Health, Education and Welfare was substituted as the party defendant by agreement of counsel.

The supplemental transcript and opinion of the Appeals Council of the Social Security Administration was filed on February 8, 1960. The Appeals Council

affirmed the decision of the hearing examiner, and held that the plaintiff was not entitled to a period of disability. No additional oral testimony is included in the supplemental transcript. However, additional medical reports introduced by the plaintiff are included along with the medical report of Dr. Cecil F. Boulden, who examined the plaintiff upon the request of the Social Security Administration.

Counsel for the plaintiff and for the Government have waived the filing of any additional briefs, and the case is now ready for disposition.

The basic facts established at the original hearing are not in serious dispute and are discussed in detail in the court's prior opinion reported in 166 F.Supp. 390. For present purposes it is sufficient to note that the plaintiff was born in 1905 and obtained a 4th-grade education. During most of his adult life he has been employed as a cross-country truck driver. In the summer of 1955 he experienced some difficulty with his health. In October 1955 the plaintiff's condition suddenly became worse, and he became dizzy and unable to stand. This condition interfered with his work as a truck driver. At that time he weighed approximately 375 pounds.

The medical evidence presented at the original hearing is discussed in detail in the original opinion.

The additional medical evidence offered by the plaintiff and included in the supplemental transcript is based on a series of tests and examinations conducted at the Holt-Krock Clinic at Fort Smith, Arkansas, on June 20, 1958. Examinations were conducted by Drs. Charles T. Chamberlain, E. A. Mendelsohn, and Carl L. Wilson. However, the principal reports were made by Dr. Chamberlain, and fully describe plaintiff's condition.

Dr. Chamberlain stated that on the basis of the findings, he diagnosed the claimant's condition as diabetes mellitus; obesity; arteriosclerosis with hypertension; hypertensive and arteriosclerotic heart disease; and angina pectoris. He added that in his opinion the claimant was permanently and totally disabled from performing any gainful activity for which he has been trained, namely, heavy manual labor.

In January 1959 the plaintiff was examined by Dr. Cecil F. Boulden of the Cooper Clinic in Fort Smith, Arkansas, at the request of the Appeals Council. In his report of January 22, 1959, Dr. Boulden recites the history given by the plaintiff which has been noted before. In the physical examination the plaintiff's height and weight were shown as 6 feet, 2 inches, 272 pounds.

In summarizing, Dr. Boulden indicated in his first report that on the basis of incomplete liver tests, it appeared from the first cephalin flocculation test that there was at least a moderate amount of liver damage. However, his supplemental report of January 29, 1959, corrected this finding as the subsequent complete liver profile failed to bear out the suspicion of liver disease previously reported. Despite a moderate amount of proteuria (protein in the urine), as represented by the pooled albumin, Dr. Boulden stated that the kidney function test was quite satisfactory. He diagnosed the claimant's condition as diabetes mellitus of the obesity type. Dr. Boulden concluded his report by stating:

"It is a well-known fact that diabetes is ameliorated when the body weight is reduced by decreasing the caloric intake. Also the need for insulin increases remarkably with increasing body weight. It is a well-known observation that the obese diabetic is relatively resistant to insulin, and if insulin is administered to such patients, relatively large amounts are necessary to make much impression on the hyperglycemia. Therefore, the amount of insulin required to control diabetes is not an index of the severity. I would like to quote from Duncan's Diseases of Metabolism, third edition, page 636: 'A diabetic state in an obese person must be mild, else he would not maintain his obesity.'

" * * * His renal function test as indicated above is quite satisfactory, despite a moderate amount of proteuria. This latter finding may be the result of his hypertension and prolonged diabetes, which has been poorly controlled. It is difficult to make a statement as to the degree of disability that his diabetic status has incurred, as his main problem has been that of obesity, and certainly the diabetes, and likewise the disability would greatly improve if he were to lose weight. His prognosis of course will depend upon his future dietary control."

Dr. Boulden indicated that before dismissing the claimant, he gave him a diet prescription for a 1200 calorie diabetic diet, and advised him that maintaining the diet was extremely important if his diabetes was ever to improve. The claimant was told that eventually his insulin dosage would be reduced, and in all probability he would be able to do without insulin if he were ever to obtain an ideal weight, ranging between 179 to 196 pounds, requiring a weight loss of at least 76 pounds. He added that the weight loss would have to be gradual to maintain a reasonable state of health.

The Appeals Council has filed a detailed decision in this case. The Council summarizes its findings by stating:

"The evidence establishes the existence of the conditions of diabetes mellitus, hypertension, and obesity prior to December 31, 1956, when the claimant last met the earnings requirement defined under Section 216(i)(3) of the Social Security Act. It therefore remains to be determined whether disability, as defined under Section 216(i)(1), exists by virtue of such conditions. The Appeals Council has now given careful consideration to the entire record in this case, including all of the medical evidence and other pertinent information, and finds that the claimant has not established that these conditions represent impairments that are both of such severity and of such long-continued and indefinite duration, commencing at a time when he met the coverage requirements of the law, as to prevent him from continuously engaging in *any* kind of substantial gainful activity."

The function of the court in reviewing the findings of the hearing examiner and of the Appeals Council is well settled. The jurisdictional statute, 42 U.S.C.A. § 405(g), provides in part:

" * * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * *."

In Fuller v. Folsom, D.C., 155 F.Supp. 348, at page 349 this court stated the general rules to be followed in reviewing a case of this nature:

"The burden of proof, both before the Referee and in the instant proceeding, is upon the plaintiff. Thurston v. Hobby, D.C.Mo., 133 F.Supp. 205; Norment v. Hobby, D.C.Ala., 124 F.Supp. 489. Not only are the findings of fact made by the Referee, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the Referee's findings to inferences and conclusions which he draws from the evidence, if there is a substantial basis for the conclusions. * * *

"The Referee's conclusions of law, however, are not binding upon the Court, although they are entitled to great weight. See, Miller v. Burger, 9 Cir., 161 F.2d 992; Carroll v. Social Security Board, 7 Cir., 128 F.2d 876; Ayers v. Hobby, D.C.Va., 123 F.Supp. 115; Ray v. Social Security Board, D.C.Ala., 73 F.Supp. 58.

"And in reviewing the decision of the Referee, the Court must not abdicate its conventional judicial function. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456; Shields v. Folsom, D.C.Pa., 153 F.Supp. 733, 734."

In his recent Treatise on Administrative Law, Professor Kenneth Culp Davis discusses the meaning of substantial evidence in Sec. 29.02 of Volume 4. At page 118 he states:

"In recent decades the principal guide to the meaning of substantial evidence has been a Supreme Court Statement written by Chief Justice Hughes: 'Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [Consolidated Edison Co. [of New York] v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).] A later statement clarifies further: Substantial evidence 'means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in ˙issue can be reasonably inferred. * * * [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939).]"

It is apparent from a reading of the entire record that the medical evidence as to the disability of the plaintiff is somewhat in conflict. Dr. Bollinger's report of December 31, 1956, states that the plaintiff is a severe diabetic and that he is suffering from hypertension. He states that Mr. Wray is becoming weaker and less able to work with the passage of time, and that he has advised plaintiff not to work.

Dr. Chamberlain, in his report dated July 12, 1958, states that the plaintiff is suffering from diabetes mellitus, obesity, arteriosclerosis with hypertension, hypertensive and arteriosclerotic heart disease, angina pectoris, and that in his opinion the plaintiff is totally and permanently disabled from performing any gainful occupation for which he has been trained, namely, heavy manual labor.

Dr. Dildy, in his report of May 15, 1957, concurs in Drs. Bollinger's and Chamberlain's diagnoses, but states that the plaintiff could improve with additional weight loss, that he needs to follow a strict diet, and that his hypertension is related to obesity, and that he received no treatment other than weight loss for the hypertension.

In his report of January 22, 1959, Dr. Boulden also diagnosed diabetes mellitus of the obesity type, but infers that it is a mild case and that the large insulin dosage is required by the plaintiff's obesity. Dr. Boulden refused to confirm the diagnosis of arteriosclerosis heart disease after conducting several tests. He did state that the plaintiff's main problem was obesity, and that the diabetes as well as any disability would greatly improve if the plaintiff would control his diet and lose weight.

The Appeals Council found from the evidence that the plaintiff does not meet the disability requirement of the Act. For the purpose of this action, disability is defined in 42 U.S.C.A. § 416(i) (1) (A), as being "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

■■ It is apparent that the Appeals Council chose to follow the medical opinion expressed by Dr. Boulden. Many of its findings and inferences are obviously based on Dr. Boulden's report. The finality accorded to administrative findings extends as well to inferences from the evidence if a substantial basis for them appears in the record. Rosewall v. Folsom, 7 Cir., 1957, 239 F.2d 724. The court cannot say that the Council did not act on substantial evidence in basing its

findings and inferences on this evidence. Dr. Boulden is a specialist in the practice of internal medicine and made his diagnosis only after an extensive examination of the plaintiff.

A reading of the entire record convinces the court that the findings and inferences of the Secretary are supported by substantial evidence. Therefore, an order is being entered today granting the defendant's motion for summary judgment and dismissing the plaintiff's complaint.