**Amil A. HARMON, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1542.**

United States District Court
W. D. Arkansas,
Fort Smith Division.
April 10, 1961.

James Marvin Holman, Clarksville, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action by the plaintiff, Amil A. Harmon, to review a final decision of the defendant Secretary, denying the plaintiff's application for a period of disability and disability benefits, as authorized by the Social Security Act, as amended, 42 U.S.C.A. §§ 416(i), 423. This court has jurisdiction of the action pursuant to Sec. 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). The applicable section of the statute provides:

"  *  *  *  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive,  *  *  *."

On October 1, 1957, the plaintiff filed his applications to establish disability and for disability insurance benefits. The applications were subsequently denied, and the plaintiff thereafter requested a hearing before a Referee. The hearing was conducted on May 5, 1959, and on October 21, 1959, the hearing examiner filed his decision denying the plaintiff's claims. The plaintiff requested the Appeals Council to review the Referee's decision, and on March 17, 1960, a hearing was held before the Appeals Council. The decision of the Appeals Council was filed May 5, 1960, affirming the decision of the hearing examiner. Plaintiff filed the instant action in this court on July 5, 1960, and in due time the defendant filed his answer. The case is now before the court on defendant's motion for summary judgment. Briefs have been received from each side in support of their respective contentions and have been considered by the court.

The plaintiff was born in Johnson County, Arkansas, on July 27, 1901. His formal education consisted of completion of the 7th grade in a rural school. Since leaving school, he acquired no special skills or training. He has spent most of his life working in and around sawmills or as a farm laborer. At the present time he lives with his wife on a 25-

acre farm in Johnson County, Arkansas. Prior to the spring of 1956 he had been employed at the Ozark Hardwood Company in Clarksville, Arkansas, for three or four years.

In May 1956 the plaintiff quit his employment to enter a hospital where he underwent surgery for the removal of his gall bladder. He was hospitalized for a period of 72 days, undergoing a total of three operations. The plaintiff had complained of stomach trouble for a year prior to his operations. Following his period of hospitalization, Harmon was confined to his home most of the time. He complains of constant pain in his stomach, is unable to keep his food down, and has, therefore, lost much of his strength. His activities around the house are primarily limited to lying in bed, sitting in chairs, and occasional short walks for exercise. He does not assist with the housework in any way, and does not drive an automobile. Harmon also complains of almost a total loss of sight in one eye due to a cataract, headaches, a double hernia, kidney ailments, a heart condition, and arthritis.

Plaintiff has submitted medical reports from doctors who treated him during his illness. The report of Dr. Robert H. Manley of Clarksville, dated October 1, 1957, reflects that the plaintiff had a ruptured peptic ulcer and that he had been operated on three times in an effort to correct this condition, but that only fair results had been obtained; that he has trouble retaining food and has suffered a marked loss of weight and physical weakness. At that time Dr. Manley noted that there was no improvement in sight for the plaintiff, that there was no surgery indicated that would help, and that he would never be able to work because his stomach would not retain enough food to maintain his strength. A report from Dr. George L. Hardgrave of Clarksville, Arkansas, also dated October 1, 1957, likewise reflects the plaintiff's stomach condition. In this report Dr. Hardgrave also notes a heart condition. However, this was not noted in a subsequent joint medical report of Drs.

Hardgrave and Manley. Dr. Hardgrave in his October 1, 1957, report states: "This man is totally and permanently disabled to work."

A subsequent joint medical report from Drs. Hardgrave and Manley, dated April 28, 1958, again reflects that the plaintiff has a severe ulcerated stomach, and that in their opinion he "is not and never will be able to do any kind of work."

A letter report from Dr. John D. Olson of the Holt-Krock Clinic of Fort Smith, Arkansas, dated May 27, 1958, discusses the various operations which the plaintiff has undergone, and reflects that the plaintiff is still suffering from a duodenal ulcer, and that unless medical therapy does not heal this ulcer, that further surgery should be considered.

On March 9, 1959, Dr. James M. Kolb of Little Rock submitted a confidential medical report to the Arkansas Department of Public Welfare. This report was apparently made at the request of the State Welfare Agency. Dr. Kolb diagnosed the plaintiff's condition as (1) bilateral hernia inguinal, complete reduceable; (2) defective vision in left eye, light perception in right eye only; (3) VHD, mitral insufficiency with decompensation and hypotension; and (4) gastro-enterostomy (history). Dr. Kolb advised that the following physical capacities of the plaintiff should be limited or avoided: stooping, kneeling, lifting, reaching, pushing, pulling, and other.

Following the hearing before the Referee, the Social Security Administration arranged for the plaintiff to be examined by Dr. Jerome S. Levy of Little Rock. Dr. Levy's report concluded with the following:

"Conclusions: The x-ray examination of the chest does not show any cardiac enlargement, and does not show any evidence of intrathoracic pathology. The heart appears to be normal in its size and contours, and the lung fields do not show any evidence of infiltrative, exudative or neoplastic disease.

"The KUB was essentially negative, showing hypertrophic changes in the bodies of the lumbar vertebrae.

"The barium enema x-ray examination also failed to show any evidence of organic disease involving the colon. On both the KUB film and the barium enema study, there was a suggestion of enlargement of the liver.

"The x-ray examination of the upper gastro-intestinal tract showed the retained residual gastric secretions, markedly and constantly deformed duodenal cap which was irritable, tender and which contained a crater of an active ulcer."

In his decision the hearing examiner gave consideration to all of the ailments complained of by the plaintiff, and found that no one impairment or combination of impairments were of such severity as would preclude the plaintiff from engaging in all substantial gainful activity. A similar result was reached by the Appeals Council. However, they did not consider that the plaintiff was suffering from any heart condition in accordance with Dr. Levy's report. The Council also properly held that the cataract in the plaintiff's right eye, which developed subsequent to October 1957, could not serve as a basis for a favorable determination in this case.

■■■ The burden of proof before the Referee and in the instant proceeding is upon the plaintiff. Not only are the findings of fact made by the Referee, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the Referee's findings to inferences and conclusions which he draws from the evidence if there is substantial basis for the conclusions. The Referee's conclusions of law, however, are not binding upon the court, although they are entitled to great weight. In reviewing the decision of the Referee, this court must not abdicate its conventional function. Blevins v. Fleming (Flemming), D.C.W.D.Ark.1960, 180 F.Supp. 287, 289; Fuller v. Folsom, D.C.

W.D.Ark.1957, 155 F.Supp. 348, 349. The court's function in a review of this nature was succinctly summarized in Lewis v. Flemming, D.C.E.D.Ark.1959, 176 F.Supp. 872, at page 874, when the court said:

"In an action of this kind, judicial review should go no further than to determine whether the findings made by the administrative fact finder are supported by substantial evidence and whether applicable principles of law have been correctly applied to the facts. Arbitrary or capricious action must be set aside, and, of course, a finding or conclusion based upon an erroneous view of the law cannot be sustained."

■■■ The meaning of the term "substantial evidence" and the application of that term by the court is, of course, of paramount importance in a determination of this case. The meaning and application of the "substantial evidence" test in Social Security cases have been subject to discussion in several recent cases. In Aaron v. Flemming, D.C.N.D. Ala.1958, 168 F.Supp. 291, Circuit Judge Rives, sitting by assignment, adopted Chief Justice Hughes' definition of substantial evidence, as follows:

" 'Substantial evidence' is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

In Corn v. Flemming, D.C.S.D.Fla. 1960, 184 F.Supp. 490, at page 493, Judge Whitehurst adopted Judge Rives' definition of substantial evidence in the Aaron case, supra, and added:

" * * * The reliance of the Referee upon isolated remarks in two or three of the many reports before him is not enough to meet the test." [Of substantial evidence.]

In Harrison v. Flemming, D.C.E.D. Ark., Docket No. LR–60–C–101, no opinion for publication, Judge Henley said:

"An administrative finding that a claimant for disability benefits or

for a period of disability under the Social Security Act has failed to establish his claim is a negative one. Such a finding is supported by substantial evidence if the state of the record is such that if the case were tried before a jury the Court would be required to deny a motion for a directed verdict made by the claimant upon the completion of all of the proof. Cf. Wray v. Flemming (D.C. Ark., 181 F.Supp. 783) citing 4 Davis, Treatise on Administrative Law, Sec. 29.02."

After considering all of the evidence in the case and the decisions rendered by the hearing examiner and by the Appeals Council, the court is convinced that the examiner and the Council applied an unduly strict interpretation of the applicable tests for disability in this case.

The hearing examiner concluded his decision with the following paragraph:

"While the claimant, as stated previously, complains of a number of impairments, all of which contribute to his inability to engage in any type of substantial gainful activity, the hearing examiner, after a careful review of the record and testimony in its entirety, is unable to find that the claimant is suffering from any one impairment of such severity as would preclude any and all substantial gainful activity, or that all of the impairments of which the claimant complains are, in combination, so disabling as to make him unable to engage in any type of substantial gainful work. The hearing examiner therefore finds that the claimant has failed to establish that he is or has been under an impairment or combination of impairments continuously since the alleged date of onset of disability of sufficient severity as to hold that he has been since the alleged date of onset of disability unable to engage in any type of substantial gainful work."

The Appeals Council summarized their decision with the following words:

"The Appeals Council agrees that the claimant probably is unable to do the work he formerly did in the lumber mill or other work requiring strenuous exertion. However, the Appeals Council finds that the evidence does not show an impairment or a combination of impairments of such severity as to make him continuously unable to do any other type of substantial gainful work from October 1, 1957, or prior thereto."

Disability is defined in 42 U.S.C.A. § 423(c) (2), as meaning:

" * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

In the hearing examiner's opinion, he stated that it was his belief that his decision was in harmony with the intent of Congress as reflected in certain excerpts from the legislative history of the 1954 amendments to the Social Security Act. In commenting on these identical excerpts, Judge Young said in Mann v. Flemming, D.C.E.D.Ark.1960, 189 F.Supp. 587, 588:

"The 'expressions' of the Congressional committees cited by the examiner are the same excerpts always inserted in the record supplied by the defendant, Secretary of Health, Education and Welfare, and are the excerpts commented upon recently by Judge Gibson [Adams v. Flemming, D.C.Vt.1959, 173 F.Supp. 873, at pages 878–879] and Judge Miller [Sebby v. Flemming, D.C. W.D.Ark.1960, 183 F.Supp. 450, at page 455]. I believe that the examiner's reliance upon these excerpts has led him to an unduly strict * * * interpretation not sanctioned by the legislative or judicial history of the sections of the

Social Security Act here involved, 42 U.S.C.A. §§ 416(i) (1) (A), 423 (c) (2)."

In Corn v. Flemming the court quoted with approval a statement by Circuit Judge Rives in the Aaron case, supra, in saying at page 493 of 184 F.Supp.:

" 'Even though the Act is worded in strong language and the Congressional history indicates a strict policy of application, to conclude in this case that the plaintiff is not "disabled" within the meaning of the Act would make "disability" commensurate with "helplessness", "bed-ridden", or "at death's door". No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perform "any substantial gainful activity". I do not interpret the Act to apply only to the totally helpless and bed-ridden nor to those at death's door.' "

Neither the hearing examiner nor the Appeals Council apparently gave any consideration as to the manner in which the plaintiff's impairments affected him as an individual in a quest to secure and perform work which could be classified as substantial gainful activity. In Dunn v. Folsom, D.C.W.D.Ark.1958, 166 F. Supp. 44, at page 48, this court said:

" * * * the act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has. Thus plaintiff's impairments would not prevent him from teaching courses in law, but the provisions of the act would be utterly futile if 'any substantial gainful activity' means activity utterly beyond the capacity of the particular person involved. 'Any substantial gainful activity' is such activity for which the particular claimant is reasonably qualified by education, training, or skill. Compare cases relating to 'total disability' under War Risk and National Service Life Insurance. * * * Thus, if a medically determinable physical impairment exists, the court should consider whether such impairment prevents the particular plaintiff from engaging in any substantial gainful activity for which he is qualified, and to that end may consider his education, training, and experience, as well as the nature and extent of the impairment itself."

In this connection the recent case of Ellerman v. Flemming, D.C.W.D.Mo. 1960, 188 F.Supp. 521, also warrants consideration. In the Ellerman case, Chief Judge Ridge said at page 527:

"Under the Social Security Act, unlike some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment, and of his age, experience and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type of work; actually, not apparently. Parfenuk v. Flemming, D.C.Mass.1960, 182 F.Supp. 532. Here, the Referee has made no such finding, whatsoever, based on evidence."

The hearing examiner and the Appeals Council both place great weight on the report of Dr. Levy. While it has no bearing on the outcome of the case, it should be noted that Dr. Levy's report was made at the request of the Social Security Administration over two months after the hearing before the Referee. Mr. Harmon was not furnished a copy of this report, but was given permission to read the letter if he desired to journey from

his home to Little Rock and do so during a specified ten-day period. The Levy report does negative plaintiff's complaint of a heart condition. However, it does recognize the existence of the plaintiff's severely ulcerated stomach condition. Dr. Levy does not attempt to state whether or not this ulcer condition is disabling as to the plaintiff. Therefore, the medical reports of Drs. Hardgrave and Manley are uncontradicted in this regard.

In Kohrs v. Flemming, 8 Cir., 1959, 272 F.2d 731, at page 736, the Court of Appeals for this Circuit said:

> "The medical opinion of the head of the Department of Orthopedics at the University of Nebraska that 'in my opinion she is totally disabled' was in nowise contradicted, either by other medical testimony, opinion or fact. The opinion of an expert witness is, of course, advisory, but as was stated in Hill v. Flemming, D.C.Pa.1958, 169 F.Supp. 240, 245, where the court was faced with a similar problem:

> " 'Expert opinions on such issues are admissible evidence to be considered by the fact finder, but when they are not repudiated in any respect by substantial evidence to the contrary, an adverse decision on these ultimate facts should be set aside as based on "suspicion" and "speculation." ' "

See also, Blevins v. Fleming (Flemming), D.C.W.D.Ark.1960, 180 F.Supp. 287, 292.

Based upon the complete record before the court, including plaintiff's various physical ailments as of October 1, 1957, together with his lack of training, education or skill, the court is convinced that the plaintiff sustained his burden of proving disability and a period of disability as defined in the act, and that the conclusions of the hearing examiner and the Appeals Council to the contrary were not based upon substantial evidence or upon a proper application of the governing law.

Therefore an order is being entered today in accordance with this opinion, denying the defendant's motion for summary judgment, and reversing and remanding the case to the defendant Secretary with directions that the plaintiff be granted a period of disability and disability benefits in accordance with his application.