Arba R. BLEVINS, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 1633.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Aug. 23, 1962

Jeptha A. Evans, Booneville, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action by the plaintiff, Arba R. Blevins, to review a final decision of the defendant Secretary, denying the plaintiff's application for a period of disability and disability benefits, as authorized by the Social Security Act, as amended, 42 U.S.C.A. §§ 416(i), 423. This court has jurisdiction of the action pursuant to Sec. 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). The applicable section of the statute provides:

> "* * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

On May 2, 1960, plaintiff filed his application to establish a period of disability and his application for receipt of disability insurance benefits. The applications were subsequently denied, and the plaintiff thereafter requested a reconsideration of said denial. Upon reconsideration, the Bureau of Old-Age and Survivors Insurance affirmed the denial of the applications, and the plaintiff thereafter requested a hearing before a hearing examiner. The hearing was conducted on October 19, 1961, and on October 30, 1961, the hearing examiner filed his decision denying the plaintiff's claim. Thereafter the plaintiff requested the Appeals Council to review the hearing examiner's decision, and on January 15, 1962, the Appeals Council denied plaintiff's request for review. The decision of the hearing examiner, therefore, became the final decision of the defendant Secretary.

Plaintiff filed the instant action in this court on January 31, 1962, and in due time the defendant filed his answer. Briefs have been received from each side in support of their respective contentions and have been considered by the court.

The pertinent facts in this case are not in dispute. The plaintiff was born December 28, 1901, in Crawford County, Arkansas. His formal education consisted of completion of part of the eighth grade. During his work history he has acquired skill as a carpenter. He was first employed when he was 18 years old as a clerk in a drug store at Fort Smith, Arkansas, selling drugs and patent medicines and working at the soda fountain. He was employed there four months and then worked in a drug store in Van Buren, where he again worked behind the soda fountain for four or five months. He then did some carpentry work, working with his father off and on, and also did some work in other drug stores. Besides drug store and carpenter work he has done some plumbing work for about a year and a half and has also done some interior and exterior painting. Plaintiff's principal line of work has been that of a rough carpenter, and he has been capable of giving estimates on labor and materials on small jobs, such as building a room to a house, but he has never contracted to build a house from the ground up.

In 1950 he began working as a general maintenance man in a housing project consisting of 15 duplex apartments. He first experienced his present trouble on April 9, 1959, when he picked up a bucket of paint on his job and felt a pain in his back. He did not go to the doctor until the 1st of May and was told that he had a bad disc. The doctor did not tape his back but the plaintiff received ultrasonic treatment for about three weeks which gave him relief from the pain.

He has tried to work two or three times since April 1959. In 1960 he took a job clearing up some new ground but was able to work only four hours. This work consisted of cutting, clearing and piling brush. In July of 1961 he tried to work driving a tractor, but he only worked part of several days when he had to discontinue this activity. He has also done some light carpentry work which consisted of finishing up some windows, but he said that this line of work caused him pain in the lower back below the belt line.

Plaintiff lives on a farm near Booneville, Arkansas, with his wife. He gets up in the morning between 5:30 and 6:00 and goes with his wife and feeds the cow while his wife milks the cow. He also feeds some range cattle which belong to his son-in-law and sister by putting the feed on a slide and pulling it out to the field in order to scatter it. He uses wood to heat his house, which both he and his wife carry inside. He can draw the water for household use, but his wife has to carry it and he does sweep the floor occasionally.

From time to time when the plaintiff's back has been free of pain, he has been able to put some posts in the ground using an ordinary post-hole digger, and can dig one or two post holes in a 10 or 15 minute period, and then has to sit down for 20 or 30 minutes until he gets relief. He is then able to return to this work, which he has been able to carry on for an average of one and a half to two hours per day. He goes fishing and sits in a canvas floater, which he states eases the pain in his back. He does a little hunting, and this activity consists of still-hunting for squirrels. He goes to bed at 8:00 or 8:30 in the evening but he usually has to lie down for a half hour or so during the middle of the day. He sleeps on a medium bed using a small pillow and sleeps on either side with his knees drawn up. He watches television for an hour at a time and is able to sit in a big arm chair with a reclining back. He uses a pillow for his back while sitting and props his feet up so that his knees are higher than his hips. He is able to drive a car which has an automatic transmission for a distance of 25 to 40 miles, but then he has to stop and get out and walk around before proceeding farther.

Plaintiff states that his back is all right but he does experience a little pain at all times. He wears a brace at present which helps when he is riding or going somewhere, but he experiences some discomfort from the brace while sitting and he does not wear it around the house. He has had medication and exercises prescribed by doctors for the relief of pain, but he has discontinued the daily use of both except for taking an aspirin occasionally. Plaintiff has had no trouble with his appetite nor with his ability to sleep except whenever he is experiencing pain.

A medical report dated July 17, 1959, and submitted by the Veterans Administration Facility of Little Rock, Arkansas, indicates that the plaintiff is well developed, well nourished, slightly obese and tense, but in no distress. An examination of the neck revealed moderately reduced cervical motion. Moderate right upper quadrant tenderness was noted in the abdomen on deep palpation due to an enlarged tender liver. Examination of the back revealed scoliosis to the right in the lumbar region. Tenderness was noted to pressure over L–4 and –5. Reduced flexion and extension motion was noted. Straight-leg-raising to 90 degrees caused no pain. No sensory changes were noted in the extremities. The left leg and thigh were smaller than the corresponding member. No deformities were noted in the lower extremities. A moderately reduced range of motion was noted in the hips. Central and peripheral nerves were noted to be intact to general examination. No pathologic reflexes were present. X-rays of the lumbosacral spine revealed a straightening of the lumbar lordosis, a moderate calcareous aortic sclerosis, and minimal lipping of the lateral margins on the left of L–4 and –5 vertebrae. The lipping

was noted to a lesser extent of L–5 and S–1.

Plaintiff was administered medication and exercises for the relief of his back condition, and at the time that he was discharged administratively in order to be transferred to St. Vincent Infirmary in Little Rock, his condition was considered to have been improved.

Plaintiff was reexamined by the same Veterans Administration facility on February 2, 1960, and a report of the same date showed substantially the same information previously set forth with a diagnosis of arthritis in the lumbar spine.

A medical report dated May 25, 1960, and submitted by Dr. William L. Steele of Little Rock, Arkansas, indicates that the plaintiff's subjective symptoms were low back pain and bilateral lower extremity pain. The objective findings were limited motion in back, no muscle weakness or sensory changes in lower extremities. X-rays of July 1959 revealed narrowing of the L–5, S–1 interspace with evidence of degenerative changes in the lumbosacral spine. The diagnosis was acute lumbosacral strain, superimposed on degenerative changes, lumbosacral spine. The treatment was conservative, consisting of an exercise program and prescribed back brace. As to restrictions, the doctor said there should be no heavy lifting, no bending nor prolonged standing.

A medical report dated June 21, 1960, and submitted by the plaintiff's family physician, Dr. R. V. McCray of Malvern, Arkansas, indicated substantially the same information as the preceding medical reports with a diagnosis of lordosis rupture and absence of intravertebral disc of the back. Furthermore, Dr. McCray described no specific restrictions on the plaintiff's activities.

A medical report of a consultative examination dated March 20, 1961, and submitted by Dr. Hoyt Kirkpatrick of the Holt-Krock Clinic of Fort Smith, Arkansas, indicates that the plaintiff's neck had a full range of motion and the spinal curves were well preserved. There was moderate muscle spasm present in the paravertebral extensor muscles, and this was felt to be true muscle spasm as demonstrated by the Trendelenberg test. The range of motion of the back was sharply limited in all planes, most back motion being carried out through the hip joints. Rotation was fairly well done, however. The straight-leg-raising test was limited bilaterally, more so on the left. The deep tendon reflexes were equal and active. Moderate atony was present in the left calf as compared to the right. X-rays taken as a result of this examination were interpreted as follows: "Lumbosacral spine: There is straightening of the normal lumbar curve suggesting muscle spasm, but I can see no definite interspace narrowing, evidence of trauma, or significant arthritic abnormality. Rather pronounced aorta and iliac vessel calcification is noted." The report concluded by stating that the plaintiff was probably disabled from heavy work as a result of his back injury.

On October 13, 1961, the plaintiff was reexamined by Dr. Kirkpatrick, and in a letter addressed to the plaintiff's attorney, dated October 17, 1961, Dr. Kirkpatrick indicated that at the time of the first examination in March of 1961 he felt that the plaintiff might have a herniated nucleus pulposus and suggested that a myelogram be carried out. However, on the occasion of the reexamination the plaintiff told the doctor that he had done fairly well during a period of several weeks preceding the reexamination when he attempted to do some carpenter work for a few hours without recurrence of his pain. The letter report concluded with the following paragraph:

"Examination at this time shows a well developed, well nourished man who appears in no particular distress. There is a fairly good range of motion of the back which, however, is carried out mostly through the hip joints without too much motion of the lumbar spine itself.

There is approximately a 50% range of motion of the low back. There is an excellent range of motion of the hip joints. Moderate tenderness is present throughout the low back generally and this is most marked in midline at the lumbosacral joint. The straight leg raising test is limited bilaterally, more so on the right side. This appears to be more to hamstring spasm than to true sciatica. In general, I think that his condition is largely unchanged since he was examined in March of 1961. I feel that he is probably disabled from heavy work, but not from sedentary or light activity."

The hearing examiner summarized his findings with the following:

"The claimant with whom we are concerned in this decision is suffering from the residuals of an on-the-job injury suffered by him in April of 1959 when he experienced back pain upon lifting a bucket of paint. The claimant, following the injury, did not seek medical service until the first of May. He has been hospital confined in the Veterans Administration Hospital but was apparently transferred to St. Vincent Infirmary in Little Rock as a result of a claim for workmen's compensation which he had pending. The claimant contends that if he takes it easy his back does not bother him; that he is able to work a few minutes at a time and then has to rest; and that he can work altogether approximately one and one-half to two hours per day.

"The claimant has never had a myelogram. He testified to the Hearing Examiner that he would be willing to undergo an operation on his back if he were assured that the operation would help him. The claimant has always performed what would be considered as heavy manual labor except for the period when he was younger and worked in drug stores for various periods of time.

The Hearing Examiner does not doubt that the claimant at this time is unable to engage in work of a hard, strenuous nature where constant standing, movement and bending would be required of him. However, it is not shown or established that he would be unable to engage in some type of substantial gainful activity commensurate with his overall ability to work nor that the back condition is of such proportions as would be unresponsive to surgical intervention or to proper therapy. It is here recalled that the claimant does not take the prescribed exercises except every day or so.

"After considering the record and testimony in its entirety, the Hearing Examiner finds that the claimant has failed to establish that he is or has been continuously under an impairment or combination of impairments of such severity as would have precluded him from engaging in some type of substantial gainful activity."

The plaintiff has met the special earnings requirements for disability purposes as of the date he alleged his onset of disability. The earnings record shows that the plaintiff will continue to meet such special earnings requirements through the calendar quarter ending June 1964.

The only issue before the court upon the record is whether there is substantial evidence in the record to support the decision of the Secretary that plaintiff failed to establish that he was entitled to a disability freeze or to monthly disability insurance benefits as of the date of his alleged onset of disability.

The burden of proof is upon the plaintiff. Not only are the findings of fact made by the hearing examiner, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the hearing examiner's findings to inferences and conclusions which he draws from the evidence

if there is substantial basis for the conclusion. The hearing examiner's conclusions of law, however, are not binding upon the court, although they are entitled to great weight. In reviewing the decision of the hearing examiner, this court must not abdicate its conventional function. Blanscet v. Ribicoff, (W.D.Ark. 1962) 201 F.Supp. 257; Morris v. Ribicoff, (W.D.Ark.1961) 194 F.Supp. 841; Harmon v. Ribicoff, (W.D.Ark.1961) 192 F.Supp. 743. The court's function in a review of this nature was succinctly summarized in Lewis v. Flemming, 176 F. Supp. 872, at page 874, (E.D.Ark.1959), when the court said:

"In an action of this kind, judicial review should go no further than to determine whether the findings made by the administrative fact finder are supported by substantial evidence and whether applicable principles of law have been correctly applied to the facts. Arbitrary or capricious action must be set aside, and, of course, a finding or conclusion based upon an erroneous view of the law cannot be sustained."

The meaning of the term "substantial evidence" and the application of that term by the court is, of course, of paramount importance in a determination of this case. The meaning and application of the "substantial evidence" test in Social Security cases have been subject to discussion in several recent cases.

In Wray v. Flemming, (W.D.Ark. 1960) 181 F.Supp. 783, this court adopted the definition of substantial evidence as found in 4 Davis, Treatise on Administrative Law, Sec. 29.02, at page 118 as follows:

"In recent decades the principal guide to the meaning of substantial evidence has been a Supreme Court statement written by Chief Justice Hughes: 'Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).] A later statement clarifies further: Substantial evidence 'means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. * * * [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939).]"

See, also, Blansett v. Ribicoff, supra; Morris v. Ribicoff, supra; Harmon v. Ribicoff, supra.

Disability is defined in 42 U.S.C.A. §§ 416(i) (1) and 423(c) (2), as meaning:

"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *."

The Social Security Administration uses as one of its evaluations of disability the following, as set forth in 20 C.F.R., § 404.1502(g), 42 U.S.C.A.Appendix:

"An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity."

In 20 C.F.R. § 404.1510 (Supp.1961), the Administration utilizes the following medical factors in determining the effect of impairments:

"(a) In order to establish that a medically determinable physical or mental impairment (see § 404.1501 (a) or (b) (1)) is present there should be evidence that medically discernible anatomical, physiological, biochemical or psychological aberrations exist. Allegations of in-

ability to work as a result of impairment such as dyspnea (shortness of breath), pain, lack of musculoskeletal function, decreased vision or hearing, decreased memory, etc., should be shown to result from structural, physiological or psychological changes which can be identified by the use of clinical and laboratory diagnostic techniques. An alleged impairment is medically determinable only if it can be verified by the use of clinical and laboratory diagnostic techniques.

"(b) The medical evidence should be complete enough to support an independent diagnostic, therapeutic and prognostic conclusion by the State agency or the Social Security Administration, as the case may be, and form a clear picture of the individual's functional limitations (e. g., where dyspnea (shortness of breath) is reported, the level of activity at which it occurs should be described). The impairment should be described etiologically (cause), pathologically (structural change), physiologically (functional), psychologically, and therapeutically (treatment and response).

"(c) In determining the severity and expected duration of an impairment, consideration is given to:

\*  \*  \*  \*  \*  \*

"(2) The extent to which the disease interferes with the ability of all body systems to contribute their share to the individual's capacity for walking, sitting, standing, bending, remembering, seeing, speaking, hearing, manipulating and maintaining interpersonal relationships;
\* \* \*."

In 20 C.F.R. § 404.1511, the impairments involving the musculoskeletal system applicable to the present case are set forth as follows:

"(a) General. In determining the effect of impairments involving the musculoskeletal system consideration is given to the effect of the impairment on the normal movements involved in working for a living. The principal factors considered are:

"(1) Remaining capacity for weightbearing, walking, standing, sitting, stooping, grasping, lifting, reaching, and bending:

"(2) The ability to perform gross or fine manipulative movements of arms, hands and fingers;

\*  \*  \*  \*  \*  \*

"(4) The ability to wear and use prosthetic devices;

"(5) The ability to coordinate;

"(6) The presence of severe pain; and

"(7) Loss of strength."

This is a borderline case. There is substantial evidence to support a finding of disability, as that term is defined by the applicable statute. Also, there is substantial evidence to support the findings and conclusions of the hearing examiner. Therefore the court is not entitled to set aside such findings and conclusions.

The facts as developed by the medical reports and the plaintiff's own testimony show that although the plaintiff's back has sustained a medically determinable injury which precludes him from indulging in any activity which includes heavy lifting, bending or prolonged standing without suffering pain, yet it is undisputed that plaintiff's back condition responds favorably to medication, therapy, and use of a brace, and his activities in the area of sitting, walking, and light work or farm chores are limited only when he overexerts himself or refuses to take advantage of the above mentioned medication, therapy and use of a corrective brace. See, Wray v. Folsom, D. C., 166 F.Supp. 390, and Hallard v. Fleming, (W.D.Ark.1958) 167 F.Supp. 205.

A reading of the entire record convinces the court that the findings and inferences of the Secretary are supported by substantial evidence. Therefore an order is being entered today dismissing the plaintiff's complaint.