**Paul E. CUMMINS, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

Civ. A. No. 494.

United States District Court
W. D. Arkansas
Fayetteville Division.

Oct. 10, 1963.

Hardin, Barton & Hardin, Fort Smith, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., E. A. Riddle, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action by the plaintiff, Paul E. Cummins, to review a final decision of the defendant Secretary denying the plaintiff's application for a period of disability and disability benefits, as authorized by the Social Security Act, as amended, 42 U.S.C. §§ 416(i), 423. This court has jurisdiction of the action and the decision of the defendant Secretary is subject to review under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On July 14, 1961, plaintiff filed his application to establish a period of disability and disability insurance benefits. The application was subsequently denied, and the plaintiff requested a reconsideration of the denial. Upon reconsideration the denial was affirmed on November 20, 1961, and the plaintiff thereafter requested a hearing before a hearing examiner. The hearing was conducted on April 11, 1962, and on January 11, 1963, the examiner filed his decision denying the plaintiff's claim. Thereafter the plaintiff requested the Appeals Council to review the examiner's decision, and on March 14, 1963, the Appeals Council denied the plaintiff's request for review. The decision of the examiner therefore became the final decision of the defendant Secretary within the meaning of 42 U.S.C. § 405(g).

The plaintiff, having exhausted all administrative remedies, filed this action on April 10, 1963. The defendant answered and filed transcript of all prior proceedings. The case is now before the court on cross motions for summary judgment. Briefs have been received from both parties in support of their respective contentions.

There is no dispute as to the pertinent facts relative to plaintiff's prior history. Plaintiff Cummins was born March 18, 1916, and ran away from his home in Chambers County, Texas, at the age of eight. He attended school in Beaumont, Texas, and went through the eighth grade which he failed. He was employed while attending school as a delivery boy for a drug store and delivered newspapers on a regular route. At the age of 16 he left school and returned to his home in Chambers County, Texas. He worked on the home farm and while so engaged began to perform part time in rodeos until 1936 when he was thrown from a horse, injuring his back and left leg. He was hospitalized about three months and for sometime was unable to walk without the use of crutches. He then returned to his family's farm in Chambers County, Texas, and in the fall returned to part-time rodeoing. After a disagreement

with his brother in 1939, the plaintiff left home and returned to rodeoing while working part time at a service station. He worked in the service station only a short time because he was required to change truck tires, and the injury to his back and left leg was so painful that he was unable to do the work. The same year he was married, and worked for a short time for the Hoosier Engineering Construction Company.

He was next employed in a defense plant for about four years, and in February 1945 he returned to Texas and was employed at a wholesale grocery. He checked the unloading of boxcars and noted the items removed from each car. Plaintiff next worked for the International Dairy Equipment Company. He started in the storeroom, and eventually became a materialman. As a material-man and foreman he was required to lift and move heavy objects and was on his feet continuously. Because of the strain on his back and the pain in his left leg, he eventually was compelled to relinquish the job. His next employment was with Modern Furniture and Appliance Company of Lufkin, Texas, as a truck driver. He was employed by Modern for two years, driving a truck, collecting accounts, and delivering furniture.

It is difficult to understand from the testimony in the record the dates of his various employment and the work that he actually did, but apparently after working for the Modern Furniture and Appliance Company, he began work as a materialman for a construction firm, moving materials from warehouse and storage to construction sites. In reference to the work, the plaintiff on page 46 of the record stated:

"But on that type of job I mean we would move a truck load of stuff where we would maybe have a half a dozen truck loads to move, then maybe we would be able to sit down for an hour. We had our coffee breaks and working conditions were good but still it was heavy work and it was still hard on me because I was working under extreme circumstanc-es, that not being able to pick up an object and walk with it like anybody else did; and up to a certain amount of weight, I might not be able to take a step with it, I couldn't walk with it after I picked it up. I was taking chiropractic treatments once or twice a week, with charges and so forth in order to keep going. Then when the job played out the contracts played out and we didn't have any more work, I went to work for a local Ford agency; as they had salesmen that covered all the territory down there, about a radius of 150 miles in every direction. They called on filling stations, independent garages, and sold parts to them; and I delivered, followed him and delivered parts; and when he would come back in and leave his orders we would fill those orders and I would deliver all those orders for him."

In 1958 he moved to Prairie Grove, Arkansas, but went back to Texas and worked there while his family lived at Prairie Grove. Labor trouble developed on the job, and he went to work on a "scab" job. He doesn't remember the name of the employer, but he thought that he was going to work as a receiver of material. However, after he took the job, he was assigned as a laborer. He worked there a week and went to see one of the bosses at Brown & Rudd Construction Company, and was informed that the construction company did not have anything other than manual labor at that time, but was told that when the company did have work that he could do, they would give him a call. Relative to that discussion with the "boss" of the construction company, the plaintiff testified that the construction company advised him that he was foolish to stay and do that kind of work "because you are not able."

"I said, well I have been out of a job quite a while, Christmas is coming up and I would like to work until Christmas. So I stayed there and worked, it was extremely hard and some of those, well anchor plates,

weighed around 300 pounds and he expected 2 men to handle them, load them and unload them and set them, and just whatever he wanted you to do, that is what he expected out of you. If you hesitate or sit down for a few minutes why he was cussing you and dunning you because you wasn't getting the work out that he thought you ought to. So on December the 11th, I believe it was the 11th, 1959, why it all broke out in a big fight there with some of the welders and this guy because he was cussing them and they shut the job down. Oh the big pipeline, I can't remember who it was now, that had the original contract revoked his contract away from him and said they would finish it themself or sublet it to someone else because he had had too much labor trouble on the job. So I got off that job, I was just about dead, I was just about whipped and there was another job supposed to start up, I stayed down there I think about 4 days, 5 days after that and I came home; and I didn't go back down there until after Christmas.

\* \* \* \* \* \*

"I wasn't in too good of shape when I went back down there. I was having quite a bit of difficulty then with this leg and my knee and especially my hip and knee. Not until I went back there then did I find out that my boss was Brown and Rudd, had destroyed all medical records and examinations because we had to take a physical before we went to work for Brown and Rudd. Well, as it so happened when I went to work for the first time for Brown and Rudd the job had not even started and when the physicals came up, why I was of course already on the payroll. When my physical came back, according to the payroll clerk, Mr. Cole took my records and tore them up, threw them away; and he told me, he said Paul if anything had ever happened to you on this job, with insurance and the physicals we have got, it would have been me and you both. He said I have stuck my neck out for you, and I said why did you do it, and he said because I liked you and he says I knew you had to work. I said, well, I never would have asked anybody to have done that for me. I would have signed a waiver, I have offered to sign a waiver on any job where the insurance did prohibit me working on the job and I said I am very grateful to you but I said I wouldn't ask anybody to do that for me, to stick their neck out for me. I said you have been with the company too long for me to cause you any trouble and he said well, Paul, it is just coming down to it, it is getting so strict to where they are so strict I just can't do it anymore." (Tr. 48–49)

Subsequently plaintiff tried to do some farming, but this type of work proved to be much too strenuous and painful. His activities are confined to light chores of a domestic nature, such as ironing, and driving an automobile with some difficulty. He presently lives at Prairie Grove, Arkansas, with his wife and two children.

Plaintiff's present condition is summarized by the hearing examiner as follows:

"The medical evidence of record makes it clear that claimant suffers a severe impairment involving the entire left lower extremity, the pelvis and the lumbar spine. The left leg is described as paralyzed (see exhibit number 12) and there is marked tilt of the pelvis to the left. There is considerable tenderness over the low back as is evidenced by marked spasm of the muscles present. In addition, as per exhibit number 17, there is a curvature of claiment's spine to the right. The physicians who have examined this claimant report that there is a serious impairment of the left lower extremity and back which precludes claimant from engaging in manual labor. However, the physicians affirmatively recog-

nize that the possibility of rehabilitation does exist."

On July 18, 1961, plaintiff was examined by Dr. Tyra Morgan of Vidor, Texas. In his report which recites the plaintiff's rodeo injuries, he diagnosed the plaintiff's condition as: "broken, crushed, deteriorated left leg; crippled hip, leg and knee; crushed pelvis and muscular degeneration." The subjective symptoms consisted of pain in the left leg, knee and hip. As to specific restrictions on the plaintiff's activities, Dr. Morgan found that the plaintiff was in extreme pain in walking due to the deformities of his left leg and hip. Dr. Morgan considered the injury permanent and stated that there had been no response to the monthly examinations and treatment through 1960.

Plaintiff was also examined in July 1961 by Dr. John W. Vinzant of Fayetteville, Arkansas. In his letter of July 29, 1961, and report of July 30, 1961, based upon examination and X-rays, Dr. Vinzant stated:

"There is complete paralysis of all muscle groups of the left lower extremity with the exception of the medial muscle group of the upper thigh. Deep tendon reflexes are absent below the hip.

"Mr. Cummins walks by slinging this paralyzed leg in an arc allowing his heel to strike the ground first and locking the knee mechanically by body weight and pressure on the walking surface in a hyperextended position.

"To maintain his balance Mr. Cummins has gradually shifted his pelvis so that the left hemi-pelvis is approximately 20° lower than the right. This pelvic tilt produces almost constant back pain.

"Since 1936 he has sustained four fractures to the patella on different occasions in falls and other accidents due to his poor gait."

In September 1961 plaintiff was examined by Dr. Coy C. Kaylor of Fayetteville, Arkansas. Dr. Kaylor is an eminent orthopedic surgeon, and his examination and diagnosis is substantially the same as previous medical reports. In his letter to the Department of Health, Education and Welfare, dated October 5, 1961, he makes the following statements of his opinion:

"Physical Examination: Patient is a 45 year old white male who walks with a very decided limp favoring his left leg. The left leg is paralyzed. He has a marked tilt of the pelvis to the left. The left lower extremity is almost frail. He has considerable tenderness over the low back and there is marked spasm of muscles present.

"X-ray Examination: X-rays made by Dr. Vinzant includes the lower lumbar spine, pelvis and hips. He has marked deformity of the left hip area and apparently an old healed fracture of the left hip. There is atrophy of the ischium on the left. There are considerable arthritic changes of the lumbar spine. X-ray of the left knee reveals an old healed patella fracture.

"Conclusion: This man has a serious disability with the left lower extremity and back and is not able to perform manual labor. It is possible that he could be rehabilitated by education for some other type work. he is not able to do hard manual labor and never will be."

Since the date of the hearing, the plaintiff was reexamined by Dr. Vinzant, and in his report and letter of December 11, 1962, he makes the following statements:

"Mr. Paul Cummins was last seen in our office on October 29, 1962. His weight was 150 pounds; his blood pressure 142/82. His chief complaint was pain in the right groin and anterior upper thigh. Physical findings were essentially the same as in our report to you on July 29, 1961, with the following additions. There was an increase in spinal curvature to the right. He had paravertebral muscle tenderness, bilaterally and muscle tenderness of the femoral

quadracepts and the muscle of the medial border of the femerol triangle.

"It is our belief that Mr. Cummin's chronic back problem is secondary to this tilted pelvis, as pointed out in our previous letter. This is a progressive problem. I believe that Mr. Cummins' pain and disability will increase as he becomes older.

"This man has a serious disability that is progressive and he will not be able to perform manual labor. The possibility of rehabilitation does exist, however."

The only issue before the court upon the record is whether there is substantial evidence in the record to support the decision of the defendant Secretary.

■■ The findings of fact made by the hearing examiner are conclusive if supported by substantial evidence, and a majority of courts also extend the finality of the hearing examiner's findings to inferences and conclusions which he draws from the evidence if there is a substantial basis for the conclusion, Hawkins v. Celebrezze, (W.D.Ark.1962) 210 F.Supp. 341; Morris v. Ribicoff, (W.D.Ark.1961) 194 F.Supp. 841. The hearing examiner's conclusions of law are not binding upon the court but are entitled to great weight, Blanscet v. Ribicoff, (W.D.Ark.1962) 201 F.Supp. 257; Harmon v. Ribicoff, (W.D.Ark.1962) 192 F.Supp. 743.

■ The limit and nature of judicial review in this type action is summarized in Lewis v. Flemming, (E.D.Ark.1959) 176 F.Supp. 872, at page 874, as follows:

"In an action of this kind, judicial review should go no further than to determine whether the findings made by the administrative fact finder are supported by substantial evidence and whether applicable principles of law have been correctly applied to the facts. Arbitrary or capricious action must be set aside, and, of course, a finding or conclusion based upon an erroneous view of the law cannot be sustained."

■ The definition of substantial evidence as approved by this court is stated in Hawkins v. Celebrezze, (W.D.Ark. 1962) 210 F.Supp. 341, at page 346 as follows:

"In Wray v. Flemming, (W.D.Ark. 1960), 181 F.Supp. 783, [784] 786, this court adopted the definition of substantial evidence as found in 4 Davis, Treatise on Administrative Law, Sec. 29.02, at page 118 as follows:

" 'In recent decades the principal guide to the meaning of substantial evidence has been a Supreme Court statement written by Chief Justice Hughes: "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' "

Substantial evidence simply means such evidence as reasonable minds would accept as adequate in support of a conclusion, Domann v. Secretary of Health, Education and Welfare, (W.D.Mo.1963) 220 F.Supp. 252.

The applicable statutes and regulations require a medically determinable physical impairment, 42 U.S.C.A. §§ 416(i) (1), 423(c) (2), which can be expected to continue for a long and indefinite period of time, 20 C.F.R., Sec. 404.1502(f), of such extent as to prevent a person engaging in any substantial gainful activity before disability can be granted.

There is no doubt that the plaintiff has a medically determinable impairment verified by approved objective findings which will be of permanent duration. The examining doctors are unanimous in their conclusion that plaintiff's affliction cannot be cured and present modes of treatment are ineffective.

The hearing examiner and the plaintiff discussed whether he should submit to a "consultative examination." The plaintiff agreed to submit to it at the hearing examiner's request, but he was never advised as to whether he should report for the examination. In his letter of

October 11, 1962, the hearing examiner stated:

"Please be advised that after review of your file with a view to obtaining the consultative examination I am still undecided as to whether or not it will be necessary that you undergo said examination."

The plaintiff's extensive history and the nature of plaintiff's affliction, as evidenced by the medical reports herein, amply demonstrate that his impairment is permanent and of indefinite duration. The hearing examiner did not in fact question this aspect of the medical evidence.

The only remaining question is whether this medically determinable impairment is of such magnitude so as to prevent the plaintiff from engaging in any substantial gainful activity.

 The hearing examiner apparently failed to give any consideration as to the manner in which the plaintiff's impairments affect him as an individual. The plaintiff is not obligated under the Social Security Act to introduce evidence which negates every imaginable job open to a man with his impairment and age and lack of experience and education. It is quite enough if he offers evidence of what he has done in the past, of his inability to perform that type of work in the future, and his lack of particular experience for any other type of work. See Park v. Celebrezze, (W.D.Ark.1963) 214 F.Supp. 153. If there are other kinds of work which are available and for which the plaintiff is suited, it is the defendant's burden to adduce some evidence from which a finding could be made that he can do some type of work, Ellerman v. Flemming, (W.D.Mo.1960) 188 F.Supp. 521; Hodgson v. Celebrezze, (3 Cir., 1963) 312 F.2d 260. The hearing examiner's reference to a list of industrial occupations is not persuasive, and the plaintiff is not required by the use of a catalogue of the nation's industrial occupations to go down such list and negate his capacity for each of them or their availability to him as actual opportunities

for employment, Jarvis v. Ribicoff, (6 Cir., 1963) 312 F.2d 707.

Nor is the information elicited from the plaintiff by the hearing examiner that the plaintiff is physically able to perform light duties in the home, such as ironing, washing dishes, persuasive of the plaintiff's ability to engage in substantial gainful activity, Jarvis v. Ribicoff, supra. The hearing examiner in his report praised plaintiff's arduous work in the past despite his severe impairment, and stated that the plaintiff's testimony was characterized by complete frankness and candor.

Reference is made in the hearing examiner's report to isolated statements in the medical reports that the plaintiff could successfully complete some type of vocational training, but yet the hearing examiner states that he was convinced that plaintiff's failure to be presently engaged in substantial gainful activity was not prompted by any desire to avoid work. The hearing examiner concludes that the plaintiff has failed to establish that he has been continuously under a physical impairment of such severity as would preclude him from engaging in some type of substantial gainful activity, yet the record is conclusive that the plaintiff is physically unable to pursue any activity which will not affect his back and paralyzed left leg, and which at the same time is substantial and gainful as steady employment. See Park v. Celebrezze, (W.D.Ark.1963) 214 F.Supp. 153, appeal dismissed in 321 F.2d 543, 8 Cir., 1963.

██ Based upon the complete record before the court, including the nature of the plaintiff's physical impairment together with his lack of ability, education and experience, the court is convinced that the plaintiff sustained his burden of proving disability and a period of disability as defined in the Act, and the conclusions of the hearing examiner and the Appeals Council to the contrary are not based upon substantial evidence or upon a proper application of the governing law.

Therefore, an order is being entered today in accordance with this opinion, granting the plaintiff's motion for sum-

**292**

mary judgment, denying the defendant's motion, and reversing and remanding the case to the defendant Secretary with directions that the plaintiff be granted a period of disability and disability benefits in accordance with his application.