W. H. L. WOODYARD, III, Insurance
Commissioner for the State of
Arkansas *v.* ARKANSAS DIVERSIFIED INSURANCE
COMPANY

79-335                                                594 S.W. 2d 13

Supreme Court of Arkansas
Opinion delivered February 29, 1980
Rehearing denied March 31, 1980

*Frank B. Sewall, Rick Halinski* and *Sarah M. Bradshaw*, Arkansas Insurance Department, for appellant.

*Wright, Lindsey & Jennings,* for appellee.

DARRELL HICKMAN, Justice. The appellant is Arkansas Insurance Commissioner W. H. L. Woodyard, III. The appellee is Arkansas Diversified Insurance Company (ADIC).

ADIC sought a certificate of authority from Woodyard to sell group life insurance to Blue Cross and Blue Shield, Inc. subscriber groups. Woodyard denied the application. On appeal his decision was reversed by the Pulaski County Circuit Court as being arbitrary and not supported by substantial evidnce. We find on appeal the circuit court was wrong and reverse the judgment. We affirm the commissioner.

The only evidence before the commissioner was presented by ADIC. The appellee candidly admitted it was a wholly owned subsidiary of a corporation named Arkansas Diversified Services, Inc. (ADS) which is a wholly owned subsidiary of Blue Cross and Blue Shield, Inc.

The question, to put it simply, is, was the commissioner justified in refusing ADIC's application. That requires an examination of the evidence, the findings, the statutory law and the rules for reviewing a decision by the commissioner.

ADIC candidly admitted it was created solely to serve Blue Cross customers. It would provide services that could not otherwise be provided by law. While ADS, the parent subsidiary of ADIC and child of Blue Cross, did offer life insurance in conjunction with Blue Cross and Blue Shield

plans, the life policies offered were not ADS's. Some were with American Foundation Life; the rest were with a Mississippi company. ADS wanted its own life company to better compete in the market place.

Blue Cross owns all the stock of ADS, which in turn owns all the stock of ADIC. The president of Blue Cross is the president of both ADS and ADIC. Other Blue Cross officials hold positions in ADS and ADIC. The companies use the same location and similar stationery. ADIC will use Blue Cross employees to sell insurance. Underwriting for ADIC will be done by a division of ADS.

There was no real controversy over the commissioner's findings of fact. He concluded that:

(2) That Ark. Stat. Ann. 66-4910(d) and 66-2618, would apparently authorize a hospital and medical service corporation to invest in a wholly owned subsidiary insurance corporation with the Commissioner's consent.

(3) That Blue Cross is limited by Ark. Stat. Ann. 66-4902 to transact business as a non-profit hospital and medical service corporation.

(4) That ADIC is not a separate corporate entity from Blue Cross since Blue Cross through ADS owns all the capital stock of ADIC. ADIC has common Officers and Directors with Blue Cross, Blue Cross pays the salary for the Officers and employees of ADIC, ADIC will sell its products only to Blue Cross subscriber groups and the record indicates that ADIC is to be treated as a division of Blue Cross. The evidence indicates that ADIC's management will not act independently but will conduct the affairs of ADIC in a manner calculated primarily to further the interest of Blue Cross.

The commissioner, when acting as a hearing officer, is governed by the Administrative Procedure Act. Ark. Stat. Ann. § 5-701 (Supp. 1979). In order for his decision to stand, it must not be arbitrary and must be supported by substan-

tial evidence. These tests are slightly different. Ark. Stat. Ann. § 5-713.[1]

The requirement that administrative action not be arbitrary or capricious is less demanding than the requirement that it be supported by substantial evidence. To be invalid, under the former standard, the action must lack rational basis. *First Nat. Bank of Fayetteville* v. *Smith*, 508 F. 2d 1371 (8th Cir. 1974) cert. den. 421 U.S. 930, or hinge on a finding of fact based on an erroneous view of the law. *Williams* v. *Celebrezze*, 243 F. Supp. 103 (E.D. Ark. 1965). Action is not arbitrary simply because the reviewing court would act differently. *Harding Glass Co.* v. *Ark. Public Service Comm.*, 229 Ark. 153, 313 S.W. 2d 812 (1958).

Whether a decision is supported by substantial evidence means, is it supported by relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Cummins* v. *Celebrezze*, 222 F. Supp. 285 (W.D. Ark. 1963). This determination, we have held, should be made after a review of the whole record. *Ark. S. & L. Bd., et al* v. *Central Ark. S. & L.*, 260 Ark. 58, 538 S.W. 2d 505 (1976).

The commissioner found that since Blue Cross could not sell life insurance itself, it should not be able to do so through corporate subsidiaries. We find that decision neither arbitrary nor unsupported by substantial evidence.

Blue Cross is essentially a medical service corporation as defined in Ark. Stat. Ann. § 66-4902. Such a corporation must meet the criteria set out in Ark. Stat. Ann. § 66-4905, which reads:

> 66-4905. Certificate of authority—Requirements.
> (1) The Commissioner shall issue an initial certificate of authority authorizing the applicant to issue contracts to its subscribers when it is shown to the satisfaction of the Commissioner that:

---

[1] The standard of review applied to the commissioner's action depends on the type of certificate sought. Compare this case with that covered in Section 17 of Act 942 of 1979.

(a) The applicant is established as a bona fide, non-profit hospital service corporation or medical service corporation or combination of the two [2];

(b) The contacts, if any, between the applicant and the participating hospitals or physicians obligate each hospital or physician executing the same to render service to which each subscriber may be entitled under the terms of the contracts to be issued to the subscribers;

(c) The amounts provided as working capital of the corporation are repayable, without interest, out of operating expenses;

(d) The amount of money actually available for working capital is sufficient to carry on the plan for a period of six (6) months from the date of issuance of the certificate of authority; and

(e) The applicant has secured contracts of participation from sufficient hospitals or physicians or both to provide ample protection for its subscribers within the area proposed to be served by the applicant.

(2) The certificate of authority shall expire or terminate and be subject to annual continuation, as provided in section 55 [§ 66-2213] for insurers in general.

(3) The certificate of authority shall be subject to suspension or revocation as provided in sections 56 through 59 [§§ 66-2214—66-2217]

[Acts 1959, No. 148, § 675, p. 418.]

We agree with the commissioner's finding that this statute limits the power of medical corporations to providing medical service. If it did not, they could not only sell life insurance, but automobiles or anything else. Clearly, an insurance company organized under a charter or statute empowering it to sell one kind of insurance lacks authority to sell another kind. *Appelman, Insurance Law and Practice*, § 10002 (1945).

The appellees argue that even if the commissioner was right in ruling Blue Cross could not market its own life insurance policies, Blue Cross could, under Ark. Stat. Ann. § 66-4910 (Supp. 1979) and § 66-2618 (Repl. 1966), invest in a wholly owned subsidiary which would. The statutes, however, provide that such an investment can be made only

with the commissioner's consent. While the commissioner may not act arbitrarily, we cannot say he was wrong here simply because he did not question the quality of ADIC's management or product. Other factors support the commissioner.

Blue Cross is a tax exempt, non-profit corporation enjoying a financial advantage over conventional insurers. Allowing it to sell, through subsidiaries, its own life insurance policies, could be unfair to competitors. While the commissioner did allow Blue Cross to invest in ADS, we can see why he disapproved of ADIC. ADS, unlike ADIC, could sell only policies written by insurance companies which lacked the competitive advantages of Blue Cross.

The appellee argues the commissioner arbitrarily pierced the corporate veil of these subsidiaries and cites the case of *Conn. Gen. Life Ins. Co.* v. *Superintendent of Insurance*, 10 N.Y. 2d 42, 217 N.Y.S. 2d 39, 176 N.E. 2d 63 (1961) as authority for upholding the trial court's decision. In fact, both parties cite it as authority.

In *Connecticut General*, the New York Court of Appeals held that a state law prohibiting foreign life insurance companies from selling fire insurance in New York did not prevent a foreign life insurance company from buying controlling interest in a New York fire insurance company. Nevertheless, courts will ignore the corporate form of a subsidiary where fairness demands it. See, *Aetna Casualty & Surety Co.* v. *Stover*, 327 F. 2d 288 (8th Cir. 1964). Usually, this will be where it is necessary to prevent wrongdoing and where the subsidiary is a mere tool of the parent. *Zaist* v. *Olson*, 154 Conn. 563, 227 A. 2d 552 (1967). We believe both criteria were met here. We do not find *Connecticut General* controlling. The degree of control likely to be exercised there by the parent company was less than what we find here.

Blue Cross, through its president and other officials, candidly admitted why they wanted ADIC to sell insurance. Blue Cross can, through its total control of both subsidiaries by stock, officers and directors, direct all efforts and endeavors of ADIC, and collect all profits.

We cannot say the commissioner was wrong in piercing the corporate veil or in denying the application. The facts are clearly there to support his findings. This order is not contrary to law.

Reversed.