JORDAN, Circuit Judge,
dissenting:
My view of this case differs from that of my colleagues. I therefore respectfully dissent.
1. The majority holds that Johnson Controls must indemnify the losses incurred by RMS, a non-indemnitee/second-tier subsidiary of IAP.[1] In my opinion, this holding runs counter to the language of § 8.3(e) of the Stock Purchase Agreement, which limits indemnification to the “Buyer and the Company,” i.e., IAP and IAPWS respectively.[2]
*926 First, § 8.3(e) does not grant indemnification to any subsidiary of IAPWS. Because New York law requires that an indemnity provision be “strictly construed to avoid reading into it a duty which the parties did not intend to be assumed,” Hooper Assoc., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903, 905 (1989), I do not think § 8.3(e) extends to subsidiaries. See, e.g., Dana Corp. v. Celotex Asbestos Settlement Trust, 251 F.3d 1107, 1115 (6th Cir.2001) (affirming summary judgment under Ohio law in favor of seller, which refused to indemnify losses incurred by former subsidiary, because indemnity provision of stock purchase agreement only indemnified buyer’s own losses incurred as a result of subsidiary’s torts). Reading § 8.3(e) in this limited manner is consistent with other provisions in the stock purchase agreement, which expressly extend indemnification rights to subsidiaries in other scenarios. See Stock Purchase Agreement [D.E. 251-2] at § 4.2(a) (“Seller shall be responsible for and pay, reimburse, indemnify and hold harmless each of Buyer, the Company and each Subsidiary [for certain taxes].”); § 4.3 (“Seller shall reimburse, indemnify and hold harmless each of the Buyer, the Company and each Subsidiary for [taxes arising from refunds or credits].”); § 5.15(f) (“Seller shall indemnify and hold Buyer, the Company and any of their respective Subsidiaries harmless against any cost, liability or expense to the extent related to a complete or partial withdrawal ... from any Multiemployer Plan.”); and § 9.2 (“Seller shall fully indemnify Buyer, the Company and its Subsidiaries with respect [to costs related to an employee benefits plan].”).
Second, the parties’ negotiations to the amendment to § 8.3(e) support a strict reading of § 8.3(e). IAP’s initial draft of the amendment requested the inclusion of subsidiaries as indemnitees. See Meyers Letter dated February 8, 2005 [D.E. 281-5] at 1 (“Seller agree[s] to indemnify and hold harmless Buyer, the Company and their respective Subsidiaries from and against all Damages arising out of or relating to any of the matters set forth on Exhibit A [which included the Fluor dispute].”) (emphasis added). Johnson Controls, however, rejected this increased responsibility, see McCarty Letter dated February 9, 2005 [D.E. 282-6] at 3, and the parties ended up agreeing to terms “subject to the limitations in [§ ] 8.3(e),” notably sans “subsidiary.” Like the Sixth Circuit in a similar case, I think that the drafting history makes a difference. See Dana Corp., 251 F.3d at 1114 (“Dana did not, however, agree to indemnify S & K [the subsidiary] for its liabilities as evidenced by a prior draft which provided as much, but was rejected.”).
Third, in ruling that the losses incurred by a second-tier subsidiary are actual losses of the parent solely because the affiliated entities filed consolidated financial statements, the majority conflates an accounting loss with an actual loss. See McAnaney v. Astoria Fin. Corp., 665 F.Supp.2d 132, 145 (E.D.N.Y.2009) (under New York law, the “reporting of consolidated results of such subsidiaries in public filings ... are insufficient without more, as a matter of law, to eviscerate the presumption of corporate separateness”). The majority says that a loss incurred by a second-tier subsidiary constitutes an identical loss to the parent because a subsidiary is an asset of the parent. See Maj. Op. at 918 (“[I]n short, RMS itself is one of IAP’s assets.”). New York corporate law, however, rejects such an assertion. See Connecticut Gen. Life Ins. Co. v. Superinten *927 dent of Ins., 10 N.Y.2d 42, 217 N.Y.S.2d 39, 176 N.E.2d 63, 66-67 (1961) (“[T]he general rule in this State [is] that in no legal sense can ... the business of a subsidiary corporation be said to be that of a parent.”) (internal citations omitted). Legally, only the shares of a subsidiary may be considered an asset of the parent. See Dole Food Co. v. Patrickson, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003) (“An individual shareholder, by virtue of his ownership of shares, does not own the corporation’s assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest. A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary”) (internal citations omitted). See also JPMorgan Chase Bank, N.A. v. Malarkey, 65 A.D.3d 718, 721, 884 N.Y.S.2d 787 (N.Y.App.Div.2009) (“[a] corporate parent which owns the shares of a subsidiary does not ... own or have legal title to the assets of the subsidiary”) (quoting Dole Food Co., 538 U.S. at 475, 123 S.Ct. 1655). IAP has never claimed a diminution in value of the shares of RMS due to the Fluor dispute, so it has suffered no actual loss. In any event, § 8.3(e) “expressly exclude[s] consequential damages,” such as the diminution of a second-tier subsidiary’s share price.
2. Unlike the majority, I don’t think that an amendment to the stock purchase agreement can, by itself, satisfy the notice required by that agreement. The text of the amendment makes its terms subject to the limitations originally specified in § 8.3(e), including the requirement to provide timely notice of an indemnification obligation. Saying that § 8.3(e), as amended, satisfies its own notice provision does not make much sense to me, and would impermissibly render the distinct notice requirement of § 8.3(e) “mere sur-plusage,” a result frowned upon by New York law. See FCI Group, Inc. v. City of New York, 54 A.D.3d 171, 862 N.Y.S.2d 352, 356 (2008) (rejecting contract interpretation that would render a provision “mere surplusage”).
Assuming that the amended § 8.3(e) could be a legally effective and sufficient vehicle for providing notice, and assuming that a second-tier subsidiary’s loss could be deemed a direct loss to the parent, the effective date of the amendment pre-dated any putative loss suffered by IAP, and therefore constituted ineffective notice. Under New York law, a right to indemnification “does not accrue until the indemnified party has made a payment, or actually suffered a loss.” Pfizer, Inc. v. Stryker Corp., 348 F.Supp.2d 131, 150 (S.D.N.Y.2004) (applying New York law). As of the effective date of the amendment — February 11, 2005 — RMS had not “actually incurred” a loss. See Plaintiffs’ Redacted Statement of Material Undisputed Facts [D.E. 251] at ¶ 60. At the earliest, Fluor asserted its claim against RMS (for roughly $10 million) on February 2, 2009. Shortly thereafter, RMS settled with Fluor for $4.4 million. Therefore, even under the majority’s view of subsidiary liability, IAP did not incur a loss (via RMS’ payment of the settlement) until sometime in 2009 — nearly four years after the amendment was signed.[3]
*928 In order for the majority’s reasoning to hold, we must assume that the 2005 amendment sufficiently specified a loss amount that, itself, only became fixed in 2009. Although the principles of special relativity may provide that “past” and “future” events are equally discernible as mere points set in a spacetime continuum,[4] the laws of New York are not so availing— no indemnification obligation exists “unless and until an actual loss has been sustained.” McCabe v. Queensboro Farm Products, Inc., 22 N.Y.2d 204, 292 N.Y.S.2d 400, 239 N.E.2d 340, 342 (1968). See also Pfizer, 348 F.Supp.2d at 150 (“To assert a claim under a loss or liability indemnification agreement, a party must establish that the amount claimed is fixed.”); Goodridge v. Harvey Group, Inc., 778 F.Supp. 115, 133 (S.D.N.Y.1991) (“It is established under New York law that agreements to indemnify against liability become enforceable when the liability is fixed”); Martinez v. Fiore, 90 A.D.2d 483, 454 N.Y.S.2d 475, 475 (1982) (“a party seeking indemnity must be held liable to the plaintiff before he can recover over from a third party”).
At best, the amendment only vaguely suggests a potential claim of an unknown amount to be made at some unknown future point in time: “The maximum exposure in settling this issue for RMS is approximately $26 million. RMS has not paid Fluor for the cost overruns and has not recognized cosi/revenue on these costs.” See Exhibit A to Amendment No. 1 to Stock Purchase Agreement [D.E. 251-3] at ¶ 1. As of February 11, 2005, there was no loss that had been “actually incurred” by IAP or RMS.

. As defined in the Stock Purchase Agreement, "Buyer” refers to IAP and "Company” refers to Johnson Controls World Services ("JCWS”). See Stock Purchase Agreement [D.E. 252] at 1. After the sale of its stock to IAP, JCWS was renamed as IAP World Services ("IAPWS”). See Plaintiffs' Redacted Statement of Material Undisputed Facts [D.E. 251] at ¶¶ 1, 2; Johnson Controls Answer [D.E. 241] at ¶ 2, 23. Thereafter, RMS remained a wholly-owned subsidiary of IAPWS, which was a wholly-owned subsidiary of IAP. See D.E. 241 at ¶ 1, 23; D.E. 251 at ¶ 1.

. The majority says that Johnson Controls, by failing to challenge the figures put forth by IAP, has forfeited its challenge. See Maj. Op. at 919. I disagree. Johnson Controls may not have contested the sums incurred by RMS, but it steadfastly denied that § 8.3(e) required indemnification. See Johnson Control's Response to Motion for Summary Judgement [D.E. 270] at 20 ("[Ajpplying the limitations in Section 8.3(e), ... means that any duty to indemnify remains limited to Damages asserted or actually incurred by IAP or IAPWS. Here, the undisputed evidence is *926 that the only entity whom Fluor asserted any Damages ... was RMS.”).

. The majority also concludes that IAP’s direct expenditures in litigating the Fluor dispute were an indemnifiable loss. See Maj. Op. at 917. I'm not so sure. First, before an indemnification right accrues, § 8.3(e) requires that the "Damages” incurred must exceed the "Threshold Amount,” i.e., $2 million. Second, as noted above, under New York law the right of IAP to indemnification would only accrue once it had actually "made a payment, *928 or actually suffered a loss." See Pfizer, 348 F.Supp.2d at 150. As of February 11, 2005, IAP did not even own the stock of RMS and therefore could not have reported any Fluor-related expenses incurred by RMS on its consolidated financial statement. See Plaintiff's Redacted Statement of Material Undisputed Facts [D.E. 251] at ¶ 3 ("On March 30, 2005, IAP purchased all of the stock of JCWS, including all of the stock for RMS.”). It is highly unlikely that IAP would have expended any money (and certainly not $2 million) on litigation for an entity that it did not yet even own. There is, at the very least, this disputed issue of material fact: whether, as of February, 11, 2005, IAP had spent any money on RMS’ Fluor-related legal fees and whether those expenses, if any, exceeded the $2 million threshold amount to permit IAP to assert an indemnification right at that time. Third, the indemnification provision "expressly exclude[d] consequential damages." "In general, the precise demarcation between direct and consequential damages is a question of fact, and the commercial context in which a contract is made is of substantial importance in determining whether particular items of damages will fall into one category or the other.” Am. Elec. Power Co., Inc. v. Westinghouse Elec. Corp., 418 F.Supp. 435, 459 (S.D.N.Y.1976) (applying New York law). See also Roneker v. Kenworth Truck Co., 944 F.Supp. 179, 186 (W.D.N.Y.1996). Moreover, New York courts have ruled that indemnification provisions, absent express language, do not include legal fees expended by an indem-nitee in asserting an otherwise indemnifiable claim. See Gorman v. Kings Mercantile Co., 36 Misc.2d 38, 231 N.Y.S.2d 642, 644 (N.Y.Sup.Ct.1962); Robbins v. Melbrook Realty Co., 28 Misc.2d 1076, 213 N.Y.S.2d 403, 407 (N.Y.Sup.Ct.1961). Here, § 8.3(e) does not expressly indemnify any "costs,” "expenses,” or "fees.” Because there are genuine issues of material fact regarding the parties' intended disposition of such expenses and whether such expenses fall under the exclusion for consequential damages, summary judgment was improper.

. Albert Einstein, Relativity: The Special and General Theory 65-68 (trans. Robert Lawson, Henry Holt and Co.) (1910) (discussing Min-kowski spacetime).